IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| WILLIAM DUNN and TABITHA DUNN, | ) ) ) | CV 10-58-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| ANCRA INTERNATIONAL LLC, and JOHN DOES I-V, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## I.  Introduction

Plaintiffs William Ray Dunn and Tabitha Dunn bring this products liability

action against Ancra International, LLC, ("Ancra"), claiming William Ray Dunn

suffered personal injury and damages when a defective load binder—distributed

by Ancra—released with great force, causing the handle of the binder to strike him

in the head.  Tabitha Dunn asserts derivative damages for loss of consortium due to William Ray Dunn's injuries.  The Plaintiffs are proceeding on strict liability claims for defects in the product design and failure to warn.  Plaintiffs also seek punitive damages.  There are currently several motions pending; this Order addresses only the Plaintiffs' motion for summary judgment on Ancra's affirmative defenses and Ancra's motion for summary judgment on punitive damages, each of which is granted for the reasons set forth below.

## II.  Factual Background

At the time of his injury, Plaintiff William Ray Dunn[1] was working as a truck driving trainee for Davis Transport, a firm based in Missoula, Montana.  Dunn was under the supervision of truck driver and fellow Davis Transport employee Fred Hunsaker.  On June 1, 2007, the two men delivered a load of well casing pipe on a flatbed trailer to Eslinger Drilling in Corvallis, Montana.  At the beginning of the haul, Hunsaker and Dunn had secured the load by chaining layers of pipe together with an Ancra load binder.  While securing the pipe, Hunsaker and Dunn placed an Ancra winch bar over the load binder's handle for additional leverage to secure the load as tightly as possible.  When they reached their

---

[1]Unless otherwise specified, all references to "Dunn" or "Plaintiff Dunn" refer to William Ray Dunn.

destination in Corvallis, Dunn climbed onto the top of the load to release the load binders so the customer, Andy Eslinger, could unload the pipe from the trailer with a forklift.  Dunn was on his knees, on top of the load of pipe when he released the binder.  There is a factual dispute as to whether Dunn was straddling the chain and load binder or positioned with his body entirely on one side of the chain and binder.  It is also disputed whether Dunn released the load binder by manually pulling the handle of the binder, or whether he instead placed an Ancra winch bar over the binder's handle for assistance in releasing the binder.  When the load binder released, Dunn was struck between the eyes, causing him injury.

The Plaintiffs move for summary judgment on Ancra's asserted affirmative defenses of misuse, assumption of the risk, and contributory or comparative negligence.  Ancra has moved for summary judgment on the availability of punitive damages.

## III.  Analysis

### A.    Summary Judgment Standard

A party is entitled to summary judgment if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).  On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the nonmoving party.  <u>Id.</u> at 252.

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the moving party has met his initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson</u>, at 248.  The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  <u>Id.</u>

**B.    Plaintiffs' Motion for Summary Judgment**

Plaintiffs seek summary judgment in their favor on Ancra's Second, Fourth, Sixth, and Seventh affirmative defenses.  Ancra's Fourth and Seventh affirmative defenses assert contributory or comparative negligence.  The Second affirmative defense alleges misuse by Plaintiff Dunn, and the Sixth affirmative defense alleges

4

assumption of the risk.  The defenses of misuse and assumption of the risk are

statutorily codified in § 27-1-719(5), Mont. Code Ann.  Plaintiffs argue that no

genuine issue of material fact exists upon which a reasonable juror could base a

finding in Defendant Ancra's favor on its affirmative defenses.  Ancra opposes the

motion.  Under Montana law the Plaintiffs' arguments prevail.

### 1.    Contributory or Comparative Negligence

Although Plaintiffs initially alleged negligence, they have abandoned their

negligence claim in their Amended Complaint and are proceeding on strict

products liability claims.  Because contributory and comparative negligence are

not valid defenses to a strict products liability claim, see § 27-1-719(5), Mont.

Code Ann., summary judgment in Plaintiffs' favor is appropriate on Ancra's

Fourth and Seventh affirmative defenses asserting contributory or comparative

negligence.

### 2.    Misuse

Unreasonable misuse is a recognized defense to a strict products liability

claim and is codified in § 27-1-719(5)(b), Mont. Code Ann.  That statute requires

a defendant to show that "[t]he product was unreasonably misused by the user or

consumer and such misuse caused or contributed to the injury."  Id.  The Montana

Supreme Court's interpretation of the statute in Hart-Albin Co. v. McLees, 870

P.2d 51 (Mont. 1994), is controlling.  In that case, the court wrote that the

definition of misuse, while incorporating the concept of abnormal or unintended

use, emphasizes unforeseeability.  Id. at 53-54.  Accordingly, the court held that

the defense of misuse is not available if the misuse was reasonably foreseeable by

the defendant.  Id.  Reasonableness is generally a question of fact to be submitted

to the jury.   Lutz v. National Crane Corp., 884 P.2d 455, 460 (Mont. 1994)

(citing Dean v. Austin Mutual Ins. Co., 869 P.2d 256 (Mont. 1994)).   However,

where the party asserting the unreasonable misuse defense acknowledges the

foreseeability of the misuse, the trial court should not submit the issue to the jury

and should instead declare the defense of misuse unavailable as a matter of law.

Id.

        Plaintiffs argue that misuse should be unavailable as a defense because the

load binder was being used for the precise purpose for which it was intended: it

was keeping tension on a chain used to secure a load, and it had been tightened

using a winch bar distributed by Ancra.  Because this conventional use of the load

binder should have been entirely foreseeable to Ancra, Plaintiffs argue, misuse is

not available as an affirmative defense.

        Ancra counters that Plaintiffs misunderstand its theory of misuse, and that

the unforeseeability lies not in the purpose for which the binder was used, but

rather in the positioning of Dunn's body as he released the binder. Ancra contends that Dunn was on his knees, straddling the chain and load binder, when he released the binder by pulling the handle toward him, "with his head placed directly within the arc of release." Anrca's Response Brief, Doc. No. 80 at 23. According to Ancra, it is not foreseeable that a user would assume such a posture while attempting to release a load binder.

Ancra's argument is unpersuasive. It makes no sense to assert that while it is foreseeable that a user would kneel to one side of the chain to release the load binder, it is unforeseeable that a user would kneel straddling the chain to perform the same task. Further evidence of foreseeability can be found in the warnings that Ancra included with the load binder. The load binder at issue in the case has a raised warning embossed on the handle that reads, "Warning move handle with caution, it may whip." Doc. No. 81-8 at 9. Moreover, the load binder was packaged with an informational tag containing the following warnings, among others:

> "Failure to use load binder properly may result in serious injury or death to you or others and/or damage cargo."

> "Use only approved handle extensions, do not use a cheater bar."

> "Do not operate while standing on the load."

"Move handle with caution and keep body clear of moving handle, it
may whip."

Id.

The warning strongly supports the inference that Dunn's use of the load

binder, even assuming he released the handle while straddling the chain, was

foreseeable.  Ancra contends that Dunn knew better than to place his head in the

arc of the handle and that his actions were unreasonable, but that argument ignores

the Montana Supreme Court's holding in Hart-Albin, which places the emphasis

on foreseeability.  There are no facts in the record which would suggest, or allow a

jury to infer, that straddling the chain while releasing the load binder is

unforeseeable to Ancra.  The misuse defense codified in § 27-1-219(5)(b) is

therefore unavailable as a matter of law, and the Plaintiffs' motion for summary

judgment is granted as it relates to Ancra's Second affirmative defense.

### 3.    Assumption of the Risk

The defense of assumption of the risk in strict products liability cases is

codified in M.C.A. § 27-1-719(5)(a), which expressly permits the following

defense:

"The user or consumer of the product discovered the defect or the
defect was open and obvious and the user or consumer unreasonably
made use of the product and was injured by it."

8

The statute was interpreted in <u>Lutz</u> to require a defendant seeking to employ an assumption of risk defense to prove (1) the plaintiff must have known of the defect and that use of the product would result in malfunction [in this case, a forceful and dangerous release of the load binder handle]; (2) that if the malfunction took place the plaintiff would suffer some injury; (3) and that the plaintiff voluntarily proceeded anyway.  884 P.2d at 461.

The test set forth in <u>Lutz</u> essentially requires a defendant to show that the user subjectively knew in advance that the malfunction and injury would take place.  <u>Lutz</u>, 884 P.2d at 462.  <u>Lutz</u> involved a cable crane which came into contact with power lines, causing the death of employee Lutz.  As another employee operated the cable crane, lifting metal pipes on to a waiting semi-trailer, Lutz was guiding the pipes by hand into place.  <u>Id.</u> at 457.  At some point the cable, which was uninsulated, came into contact with overhead power lines and electrocuted Lutz.  <u>Id.</u>  In finding the trial court erred by allowing an assumption of risk instruction to the jury, the court held that the defense required more than a showing that Lutz, through his experience and training, was aware of the facts giving rise to the danger.  The court went further, stating that assumption of risk was a subjective concept requiring that Lutz actually "*knew in advance* that the cable *would come in contact* with the power line."  <u>Id.</u> at 461.  (Emphasis in

9

original.)  "Because Lutz did not know that the cable would contact the power line," the court wrote, "he could not have assumed the risk for his own death."  Id. at 462.  While Lutz was negligent in carrying on his activity in light of the obvious dangers, the court concluded that allowing the assumption of risk defense in that case would "undermine this Court's efforts to insure that what remains at issue in products liability cases is not the *conduct* of the reasonable person but the *condition* of the product."  Id. at 462.  (Emphasis in original.)

Under the standard set forth in Lutz, summary judgment in favor the Plaintiffs is warranted on the assumption of risk defense because the record contains no evidence that would allow a reasonable trier of fact to conclude that Plaintiff Dunn knew in advance that by straddling the chain to release the load binder, he would be struck in the face by the handle.  Dunn's use of the binder was unreasonable only if there is proof that he *knew* he would be struck in the face when he released it.  Lutz, 884 P.2d at 461-62.  Ancra says Dunn disregarded an "almost certain" risk when he released the binder with his head in the arc of the handle.  As support, Ancra points to testimony by Dunn that he was aware of the purpose and function of a load binder; testimony by Hunsaker that he had observed Dunn using load binders; and testimony by Guy Bennett of Davis Transport that he put Dunn through five hours of securement and safety training,

including specifically telling students they must use a winch bar release the binder and that "when you're using your bar at all times, you don't use a cheater bar, this is the only approved bar, you're also working to the side of this darned thing, you're never working over it, in the event, again, it could pop on you." Doc. No. 81-4 at 7.

Lutz requires something more than a showing that Dunn knew of facts giving rise to danger. In the light most favorable to the Defendants, the facts suggest that Dunn's choice to release the load binder while straddling the chain and binder was negligent. But negligence is not enough to prevail on an assumption of the risk defense. As the court in Lutz stated, the existence of facts and circumstances which would make the risk evident are insufficient to support an assumption of risk defense. There is nothing in the record that would allow a reasonable juror to conclude, as Lutz requires, that Dunn subjectively knew that the handle would whip upon release and strike him in the head. Summary judgment is granted in favor of the Plaintiffs on the affirmative defense of assumption of the risk.

## C.    Defendant Ancra's Motion for Summary Judgment on Punitive Damages

Plaintiffs' Amended Complaint includes a claim for punitive damages based

on Plaintiffs' theory that Ancra distributed the subject load binder with the

knowledge that the product was dangerously defective.  Ancra moves for summary

judgment, contending Plaintiffs have failed to allege facts sufficient to sustain a

finding in their favor on punitive damages.

Section 27-1-221, Mont. Code Ann., allows a trier of fact to award punitive

damages when the defendant has been found guilty of actual fraud or actual

malice.  The Plaintiffs in this case are proceeding on an actual malice theory.

> A defendant is guilty of actual malice if the defendant has knowledge
> of facts or intentionally disregards facts that create a high probability
> of injury to the plaintiff and:
>
> (a)    deliberately proceeds to act in conscious or intentional
>        disregard of the high probability of injury to the plaintiff; or
>
> (b)    deliberately proceeds to act with indifference to the high
>        probability of injury to the plaintiff.

Mont. Code Ann. § 27-1-221(2).  Each of the elements of a punitive damages

claim must be proved by clear and convincing evidence.  Mont. Code Ann. § 27-1-

221(5).  Clear and convincing evidence is defined as "evidence in which there is

no serious or substantial doubt about the correctness of the conclusions drawn

from the evidence. It is more than a preponderance of evidence but less than

beyond a reasonable doubt."  Id.

Punitive damages are "extraordinary in their nature," Gagnier v. Curran

12

Const. Co., 443 P.2d 894, 901 (Mont. 1968), and "should be applied with caution." Safeco v. Ellinghouse, 725 P.2d 217, 226-27 (Mont. 1986). An award of punitive damages requires a showing of something more than gross negligence. Cashin v. Northern Pac. Ry. Co., 28 P.2d 862, 869 (Mont. 1934).

Ancra maintains that the Plaintiff has produced no evidence that Ancra disregarded or was indifferent to a high probability of injury resulting from use of the load binder. Ancra says the facts in the record show that the design of the load binder is well-established, its use is widespread in the trucking industry, and it is known to all in the industry to require careful use. Ancra also emphasizes that there is no evidence in the record of a history of injuries caused by the design and known to Ancra at the time it distributed the subject binder. Under these circumstances, Ancra argues, no reasonable trier of fact could find by clear and convincing evidence that the load binder presented a "high probability" of injury that was known to Ancra.

To show that Ancra acted with actual malice, Plaintiff Dunn begins by pointing to facts that Dunn claims show Ancra's knowledge of the dangerousness of the load binder. Dunn notes that Ancra designed its winch bar with a box end that would allow it to fit over the handle of the load binder, and thus Ancra must have known that the winch bar could be used to gain mechanical advantage in

13

tightening or releasing the handle.  Howard Knox, Ancra's Director of Engineering, stated in his deposition that he was aware that use of the winch bar to tighten the binder would load more tension into the binder, and thus increase the potential for danger upon release, particular for an inexperienced user.  Moreover, in Ancra's catalog and on an engineering drawing, Ancra warned against using its winch bar to tighten a load binder.

Based on these facts, Dunn argues there is a genuine issue as to Ancra's knowledge of the dangerousness of the load binder and winch bar.  While Dunn may be correct as to the existence of genuine issues on Ancra's knowledge of dangerousness, such proof is irrelevant to the punitive damages inquiry.  Evidence of Ancra's mere knowledge of a potential danger is not enough; to survive Ancra's summary judgment motion, Dunn must come forward with facts sufficient to give rise to a genuine issue as to each of the elements of a punitive damages claim, i.e., that (1) Ancra knew of facts or intentionally disregarded facts (2) that created a high probability of injury to Dunn and (3) deliberately acted in conscious or intentional disregard of, or with indifference to, the high probability of injury to Dunn.  Mont. Code Ann. § 27-1-221(2).

Plaintiff Dunn comes up short as to the second element.  There are no facts in the record that would allow a reasonable trier of fact to conclude based on clear

and convincing evidence that the Ancra load binder and winch bar create a high

probability of injury.  In an attempt to counter Ancra's assertion that injuries

caused by its load binder are a rare occurrence, Dunn points to the following:

- Comments in three patent applications, dated 1972, 1981, and 1996, referring to the danger of using leverage to tighten a load binder.  The applications are not alleged to relate to Ancra or its products in any way.

- Three reports of injuries resulting from the use of cheater bars on load binders in various industrial journals or newsletters.

- A report from the American Association for Justice (formerly the Association of Trial Lawyers of America) of a single previous lawsuit from 1994 involving an Ancra winch bar and a load binder the manufacturer of which was not known.

- Citations to ten other reported lawsuits across the United States, spanning from 1957 to 2007, involving load binders, none of which are alleged to involve Ancra products.

Ancra has sold more than 400,000 load binders since 1986.  Plaintiff Dunn

has presented evidence of one known incident in which an Ancra product caused

an injury, and that case involved an Ancra winch bar and a load binder of

unknown origin.  That is not proof from which a juror could conclude the Ancra

load binder and winch bar create a high probability of injury.  Taking in to account

all reports of injury identified by Plaintifs, there are a total of 14 known incidents

over the past fifty years involving all load binders from all distributors combined.

That is not proof that would allow a reasonable trier of fact to find beyond any

15

serious or substantial doubt that Ancra's load binder creates a high probability of injury.

Through its Director of Engineering, Howard Knox, Ancra denied knowledge of any reports of injury, a denial Plaintiffs dismiss as "apparently anecdotal."  Doc. No. 71 at 10.  But the burden is not on Ancra to prove what it did not know.  It is the Plaintiffs who bear the heightened burden of proving by clear and convincing evidence that punitive damages are warranted.  Because the facts in the record, even when viewed most favorably to the Plaintiffs, do not support such a finding, summary judgment is granted in favor of Ancra on the punitive damages claim.

## IV.  Order

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment (Doc. No. 30) on Ancra's Second, Fourth, Sixth, and Seventh affirmative defenses is GRANTED, and Ancra's motion for summary judgment (Doc. No. 37) on punitive damages is GRANTED.

IT IS FURTHER ORDERED pursuant to Rule 56(g) of the Federal Rules of Civil Procedure that the following facts not genuinely in dispute and will be treated as established in all further proceedings in this case:

1.    Ancra distributes, but does not manufacture, load binders like the one

involved in this case.

2.     Ancra also distributes a winch bar that is designed to be placed over the

Ancra load binder's handle for assistance in releasing the binder.

3.     William Ray Dunn was working as a truck driving trainee for Davis

Transport on June 1, 2007, under the supervision of truck driver and fellow Davis

Transport employee Fred Hunsaker.

4.     On June 1, 2007, Dunn and Hunsaker delivered a load of well casing pipe

on a flatbed trailer to Eslinger Drilling in Corvallis, Montana.

5.     At the beginning of the haul, Hunsaker and Dunn had secured the load by

chaining each layer of pipe together with an Ancra load binder.

6.     While closing the load binder to secure the pipe, Hunsaker and Dunn placed

a winch bar over the load binder's handle for additional leverage to secure the load

tightly.

7.     Upon delivering the load of pipe in Corvallis, Dunn climbed onto the top of

the load to release the load binder so the customer, Andy Eslinger, could unload

the pipe from the trailer with a forklift.

8.     Dunn was on his knees, on top of the load of pipe when he released the load

binder.

9.     When the load binder released, the handle struck Dunn between the eyes,

causing him injury.

10.    The handle of the subject load binder is stamped with a raised warning that reads "WARNING MOVE HANDLE WITH CAUTION, IT MAY WHIP."

Dated this 26th day of September, 2011.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT